**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2755-19

ANDREW REGER,

    Plaintiff-Appellant,

v.

FAIR HAVEN ZONING BOARD
OF ADJUSTMENT and FAIR
HAVEN RETAIL, LLC,

    Defendants-Respondents.

_____

Argued April 26, 2021 – Decided June 30, 2021

Before Judges Gooden Brown and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-2591-19.

R.S. Gasiorowski argued the cause for appellant (Gasiorowski & Holobinko, attorneys; R.S. Gasiorowski, on the briefs).

Michael A. Irene, Jr., argued the cause for respondent Fair Haven Zoning Board of Adjustment.

Adam Garcia argued the cause for respondent Fair Haven Retail, LLC (Giordano, Halleran & Ciesla, attorneys; Adam Garcia, on the brief).

PER CURIAM

Plaintiff Andrew Reger appeals from the January 27, 2020 order of the Law Division dismissing his complaint in lieu of prerogative writ challenging the June 6, 2019 resolution of defendant Fair Haven Zoning Board of Adjustment (Board). The June 6, 2019 resolution affirmed a determination of the Fair Haven zoning officer that a proposed restaurant was a permitted use under the local zoning ordinance. We affirm.

I.

The following facts are derived from the record. Defendant Fair Haven Retail, LLC (FHR) owns a commercial shopping plaza in Fair Haven. FHR proposed to locate a Dunkin' Donuts restaurant in an empty tenant space at its property. The proposed restaurant included interior seating, but no drive-through window, exterior menu board, outside seating, or designated area for consumption of food in vehicles.

The zoning ordinance contemplates four types of restaurants: Category One, Category Two, Category Three, and Drive-In Restaurant. The primary issue before the court is whether the FHR's proposed Dunkin' Donuts is, under

2

the ordinance, a Category Two restaurant, which is a permitted use at FHR's property, or a Drive-In restaurant, which is not a permitted use. The categories of restaurants are defined in the ordinance as follows:

> Restaurant, Category One: Category One Restaurant means a restaurant which is designed for and whose primary function and operation is the preparation and service by employees of meals to a customer or customers seated at a table at which the meal is consumed. A category one restaurant operates without substantial carry-out service; with no delivery service; with no drive-thru, drive-in or service in vehicles; and without service at counters or bars unless the restaurant is licensed to serve alcoholic beverages.

> Restaurant, Category Two: Category Two Restaurant means a restaurant whose primary function is the preparation and service by employees of food or drink to customers as part of an operation which may be designed with carry-out service; delivery service; self-service; or on-premises consumption except that no drive-in, drive-thru, or service in vehicles is permitted.

> Restaurant, Category Three: Category Three Restaurant means a restaurant whose primary function is the preparation and service by employees of food or drink to customers as part of an operation which may be designed with carry-out service; delivery service; self-service; on-premises consumption; or customer pick-up service utilizing a vehicular drive-thru.

> Restaurant, Drive-In Restaurant: Drive-In Restaurant means an establishment where the majority of the patrons purchase food, soft drinks, ice cream, and similar confections for takeout or consumption on the premises but outside the confines of the principal

3

building, or in automobiles parked upon the premises, regardless of whether or not, in addition thereto, seats or other accommodations are provided for the patrons.

In 2018, FHR submitted a zoning permit application to the municipal zoning officer for the proposed restaurant. FHR took the position that the proposed restaurant is a Category Two restaurant and was exempt from site plan review. The zoning officer denied the permit. Although he determined that the proposed restaurant is a Category Two restaurant permitted at the property, he also concluded that the proposal is not exempt from site plan review.

FHR subsequently submitted a site plan application to the municipality's Planning Board. While the application was pending, Reger filed an appeal to the Board challenging the zoning officer's determination that the proposed restaurant is a Category Two restaurant and seeking an interpretation of the zoning ordinance.[1]

The Board held two days of hearings spanning eight and one-half hours on Reger's appeal. The zoning officer explained how he reached his decision. First, he determined that the proposed restaurant is not a Category Three restaurant because it has no drive-thru service, exterior menu board, walkup

_____

[1] Another resident, Gail O'Reilly, made a similar application to the Board, which consolidated the two applications. O'Reilly's claims are not before us.

service, or pick-up window. Second, he determined the proposed restaurant is not a Drive-In restaurant because it is not designed with an area for on-premises consumption outside the principal building. Third, he determined that the proposed restaurant is not a Category One restaurant because it is not primarily a sit-down, table service restaurant. Finally, the zoning officer determined that Category Two restaurant is the "best fit" for the proposed restaurant because it has interior seating, as well as carry-out service, but no drive-thru, exterior menu board, pick-up window, or service in vehicles.

The zoning officer also testified that, having conducted an extensive analysis of prior restaurant applications in the municipality, his determination is consistent with the Board's historical interpretation of the zoning ordinance. He identified several restaurants, including an ice cream shop in the same shopping center as the proposed restaurant, that are similar to the proposed restaurant and were approved by the municipality as Category Two restaurants.

The Board also heard testimony from Michael Simpson, an expert presented by Reger, who opined that the proposed restaurant is a Drive-In restaurant because, in his view, a majority of Dunkin' Donuts patrons purchase food for takeout, which satisfies the first prong of the definition of Drive-In restaurant in the ordinance, whether or not the food is consumed on premises.

Nicolas Graviano, a licensed professional planner, testified on behalf of FHR. He offered the opinion that the proposed restaurant is a Category Two restaurant. According to Graviano, the ordinance creates a three-prong definition for a Category Two restaurant. First, the primary function of the establishment must be the preparation of food for service to customers. He testified that it is undisputed that the proposed restaurant satisfies this prong. Second, the establishment may incorporate carry-out service and delivery service, as well as on-site consumption. He testified that the proposed restaurant satisfies this prong because it provides both carry-out service and on-site consumption. Third, the proposed restaurant must have neither a drive-thru lane, drive-thru window, nor a drive-in operation. He testified that the proposed restaurant has none of these features. There is no dispute that the proposed restaurant does not have a drive-thru lane or drive-thru window.

Graviano testified that the proposed restaurant is not a drive-in operation because the primary characteristic in the definition of a Drive-In restaurant is that a majority of customers purchase food for take-out or consumption on the premises outside of the principal building or in vehicles. The proposed Dunkin' Donuts is not designed to permit consumption of its products on the premises outside of the principal building or in vehicles. The proposed restaurant has

A-2755-19

tables only in the principal building and no designated area or accommodations for on-premises consumption outside the principal building or in the parking lot and no delivery of food to vehicles.

Several members of the public testified before the Board. They raised concerns about the impact the proposed restaurant would have on the volume of vehicular traffic on River Road, on which the shopping plaza is located.

Reger's counsel attempted to submit to the Board a parking and circulation evaluation prepared for FHR by Karl Pehnke, PE, of an engineering and environmental services firm. The letter contains the expert's opinion that existing access, parking, and traffic circulation at the shopping center will be adequate for the proposed restaurant. To reach that conclusion, Pehnke relied on the presumption that ninety to ninety-five percent of the proposed restaurant's patrons will carry their purchases out of the store. Reger did not offer to call Pehnke as a witness and likely could not do so given Pehnke's retention as an expert by FHR. He sought the admission of the expert's written opinion without affording the Board the opportunity to question its author. The Board declined to admit the evaluation because it was not before the zoning officer when he made his decision and because traffic flow at the shopping center was not relevant to the restaurant definitions in the ordinance.

7

On June 6, 2019, the Board adopted a resolution affirming the zoning officer's determination that the proposed restaurant is a Category Two restaurant permitted at FHR's property. The resolution set forth an extensive analysis of the zoning ordinance and a detailed explanation of the Board's decision. The Board adopted the testimony and analyses of the zoning officer and Graviano and concluded there was a natural progression in the ordinance. The Board explained that a Category One restaurant is a typical sit-down, table service restaurant with limited take-out service. A Category Two restaurant is similar to a Category One restaurant, except that it may incorporate carry-out service and delivery service, along with on-site consumption, but may not offer drive-thru service. A Category Three restaurant is similar to a Category Two restaurant, but is permitted to incorporate customer pick-up service using a vehicular drive-thru. Finally, a Drive-In restaurant differs from the other categories of restaurants because it offers on-premises consumption outside the principal building or in vehicles. The Board found this category is intended to refer to "classic drive-ins," such as "Stewart's," "Sonic," and the like.

On July 24, 2019, Reger filed a complaint in lieu of prerogative writ in the Law Division challenging the Board's resolution. He disputed both the

substantive basis for the resolution and the Board's decision not to admit Pehnke's evaluation.

On January 15, 2020, Judge Owen C. McCarthy issued a comprehensive oral opinion affirming the Board's resolution and dismissing the complaint. Judge McCarthy reviewed the Board's decision, summarized the testimony on which it was based, and concluded that the Board's interpretation of the zoning ordinance was reasonable and supported by the record. The judge noted that the Board's decision is consistent with the commonly understood definition of a drive-in restaurant and comports with the historical application of the municipality's zoning ordinance to restaurants similar to the proposed Dunkin' Donuts. The judge rejected as "overly expansive" Reger's argument that "any restaurant where customers drive their vehicles to a location, park their vehicles, exit their vehicles and enter an establishment to purchase food or refreshments before returning to their vehicles to leave the property is a drive-in restaurant."

In addition, Judge McCarthy concluded that the Board did not abuse its discretion when it declined to admit the expert evaluation into evidence. The judge found that the contents of the report were not relevant to the issue before the Board because the restaurant definitions in the zoning ordinance are not dependent on the amount of traffic generated by a restaurant. In addition, the

judge noted that the author of the evaluation was not present to testify before the Board. The judge concluded that admission of the evaluation without the author's testimony would violate "the most basic elements of fairness and due process."

A January 27, 2020 order memorializes the trial court's decision.

This appeal follows. Reger raises the following arguments.

POINT ONE

THE ZONING BOARD'S INTERPRETATION OF ITS LAND USE AND DEVELOPMENT'S [SIC] REGULATION DEFINITIONS OF A CATEGORY TWO RESTAURANT AND A DRIVE-IN RESTAURANT IS INCORRECT AS A MATTER OF LAW.

POINT TWO

THE ZONING BOARD ERRED IN REFUSING TO ALLOW INTO EVIDENCE THE AUGUST 20, 20[1]8 LETTER OF KARL A. PEHNKE, THE APPLICANT'S ENGINEER AND TRAFFIC EXPERT BEFORE THE PLANNING BOARD.

II.

"[W]hen reviewing the decision of a trial court that has reviewed municipal action, we are bound by the same standards as was the trial court." Fallone Props., LLC v. Bethlehem Twp. Planning Bd., 369 N.J. Super. 552, 562 (App. Div. 2004). "[P]ublic bodies, because of their peculiar knowledge of local

10

conditions, must be allowed wide latitude in their delegated discretion." Jock v. Zoning Bd. of Adjustment, 184 N.J. 562, 597 (2005). "The proper scope of judicial review is not to suggest a decision that may be better than the one made by the board, but to determine whether the board could reasonably have reached its decision on the record." Ibid. As a reviewing court, we are not to substitute our judgment for that of the local board unless there is a clear abuse of discretion. Cell S. of N.J., Inc. v. Zoning Bd. of Adjustment, 172 N.J. 75, 82 (2002) (citing Med. Realty Assocs. v. Bd. of Adjustment, 228 N.J. Super. 226, 233 (App. Div. 1988)).

Having carefully reviewed the record in light of these legal principles, we affirm the January 27, 2020 order substantially for the reasons stated by Judge McCarthy in his oral opinion. We agree with Judge McCarthy's conclusion that the Board's decision was reasonable and supported by the record. The Board applied its expertise and knowledge of local conditions when it interpreted the zoning ordinance's restaurant category definitions. The Board's conclusion that a Dunkin' Donuts is not a drive-in restaurant is consistent with the intent of the ordinance and the history of its application in the municipality. The Board acted well within its discretion when it rejected Reger's rigid interpretation of the ordinance.

We also agree with Judge McCarthy's conclusion that the Board did not abuse its discretion when it denied Reger's request to admit the expert's evaluation. The expert was retained by FHR. Reger did not, and likely could not, call him as a witness. See N.J.S.A. 40:55D-10(d) ("[t]he testimony of all witnesses relating to an application for development shall be taken under oath . . . and the right of cross examination shall be permitted to all interested parties . . . .") In addition, the expert's opinion concerned traffic conditions at the subject property, a topic not relevant to the ordinance's restaurant definitions.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2755-19